# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, and U.S. CUSTOMS AND BORDER PROTECTION, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) 2:18-cv-00176-JDL ) ) ) ) ) ) ) |

## ORDER ADJUDICATING DISPUTED REDACTIONS

This matter arises from a request under the Freedom of Information Act ("FOIA"), 5 U.S.C.A. § 552 (West 2019), made by the American Civil Liberties Union of Maine Foundation ("ACLU") to the U.S. Department of Homeland Security ("DHS") and U.S. Customs and Border Protection ("CBP") (collectively, the "Government") for certain records about immigration investigations in which Government officers have stopped bus passengers to ask whether they are United States citizens. The Government has subsequently produced responsive records but the ACLU objects to certain redactions made to those records by the Government. The Government contends that the redactions are supported by § 552(b)(7)(E) ("Exemption 7(E)"), which concerns law enforcement techniques and procedures. After an *in camera* review of the disputed records, and as explained below, I conclude that some, but not all, of the redactions qualify under Exemption 7(E) and are properly redacted.

# I. ANALYSIS

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). As a result, FOIA requires federal agencies to promptly release records in response to a request for production, § 552(a)(3)(A), and authorizes federal courts "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." § 552(a)(4)(B). However, to "safeguard[] the efficient administration of the government, the FOIA provides that certain categories of materials are exempted from the general requirements of disclosure." *Carpenter v. U.S. Dep't of Justice*, 470 F.3d 434, 438 (1st Cir. 2006). Nonetheless, FOIA exemptions are construed narrowly, and any doubts are resolved in favor of disclosure. *Id.* (citing *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)).

The Government asserts that all of the contested redactions are subject to Exemption 7(E), which shields from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]

§ 552(b)(7)(E). Exemption 7(E) "sets a relatively low bar for [an] agency to justify withholding, requiring only that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Widi v. McNeil*, No. 2:12-cv-00188-JAW, 2016 WL 4394724, at *28 (D. Me. Aug. 16, 2016)

(quoting *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011)). However, the Government bears the burden of proving that the withheld materials fall within an enumerated exemption, § 552(a)(4)(B), and a "district court must make a *de novo* determination as to the validity of [an] agency's exemption claim." *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 556-57 (1st Cir. 1992).

The records at issue here can be sorted into three broad categories: (1) an officer training presentation (the "Trans Check Presentation"), *see* ECF No. 27-1; (2) daily unit assignment log summaries (the "Shift Logs"), *see* ECF No. 27-2; and (3) agency e-mail correspondence (the "Bus Check E-Mails"), *see* ECF Nos. 27-3, 27-4, 27-5, 27-6. I address each in order.

## 1.    The Trans Check Presentation

The Trans Check Presentation contains "agent instruction and guidance pursuant to agency policy, discussing mandatory tactics and techniques used by U.S. Border Protection during transportation checks." ECF No. 28 at 2. The Government argues that the disputed redactions are appropriate under Exemption 7(E) because "if made public, such information could potentially be used to circumvent the law and/or make agents jobs more difficult[,]" and because "the guidance at issue pertains directly to how the agency's law enforcement personnel are required to interact with bus passengers." *Id.* at 2-3 (internal citations omitted). After reviewing the unredacted document *in camera*, I conclude that the redactions appearing in ECF No. 27-1 at pages 7, 8, and 11 ¶¶ 10-11, which relate to the Supreme Court's holding in *United States v. Drayton*, 536 U.S. 194 (2002), do not fall within the ambit of Exemption 7(E) because they do not implicate "investigative techniques not generally

known to the public." *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir.

1995).

## 2.    The Shift Logs

The Shift Logs contain information "covering [agency] staffing levels, shift

hours, zone assignments, zone boundaries, and vehicle numbers[.]" ECF No. 28 at 3.

The Government argues that the disputed redactions are appropriate under

Exemption 7(E) because:

> [D]isclosing this information to the public would provide an outline of
> the Houlton Sector's enforcement capabilities and the number of agents
> patrolling certain sections at certain hours.   This information is
> especially sensitive because it represents locations where U.S. Border
> Patrol is present and the areas of its concentrated patrolling and
> enforcement activities.   Making this information publically available,
> whether in Houlton Sector alone, or nationwide, would give an
> advantage to those seeking to avoid encounters with U.S. Border Patrol;
> aid individuals who seek to cross the border illegally, or who seek to
> remain in the country illegally, to develop countermeasures to evade
> detection, inspection and examination; and reveal the locations of U.S.
> Border Patrol agents, which could put them in jeopardy due to
> individuals who would bring harm to the agents once they know where
> the agents are deployed.

ECF No. 27 ¶ 4.

After reviewing the unredacted documents *in camera*, I conclude that the

redactions to ECF No. 27-2 concern detailed and recent agent assignment

information, which constitutes "techniques and procedures" under Exemption 7(E).

*See Families for Freedom v. U.S. Customs & Border Prot.*, 837 F. Supp. 2d 287, 299

(S.D.N.Y. 2011) ("Techniques and procedures include how, where, and when agents

board Buffalo-region trains and buses, talk to passengers, and make arrests[.]").  In

*Families for Freedom*, the court found that historical staffing statistics did not

warrant protection under Exemption 7(E) because the exemption does not apply to

"staffing decisions defendants made years ago." *Id.* Here, however, the Government indicates that the staffing information in the Shift Logs has continuing relevance to its present patrolling and enforcement activities. *See* ECF No. 27 ¶ 7. I therefore uphold the Government's redactions to ECF No. 27-2 as valid under Exemption 7(E).

**3.    The Bus Check E-Mails**

The Bus Check E-Mails consist of four documents: the "Bangor TCB E-Mails" (ECF No. 27-3), "Bus Check" (ECF No. 27-4), "Bangor Bus Check" (ECF No. 27-5), and "Checkpoint" (ECF No. 27-6).

**a. Bangor TCB E-Mails**

The redactions to the "Bangor TCB E-Mails" "withhold an operations order, which is an internal, law enforcement-sensitive document containing specifics of a U.S. Border Patrol operation, or other references to the when and where of the underlying transportation checks." ECF No. 27 ¶ 8. The ACLU objects to Exemption 7(E) redactions on multiple pages: ECF No. 27-3 at 2, 4, 7, 9-11, 14-16. I evaluate the redactions based on the type of information they withhold.

The redactions to ECF No. 27-3 at 2, 4, and 7 shield "which scheduled shift was responsible for certain activities related to [an] operation." ECF No. 27 ¶ 1(a). Although these redactions pertain to operations that occurred on discrete days in the past, I conclude that the disclosure of this information could produce a "reasonable increased risk of circumvention of the law." *Families for Freedom*, 837 F. Supp. 2d at 300. Therefore, Exemption 7(E) does apply because the records indicate that "the current distribution of agents is similar to the distribution of agents" discussed in the redacted materials. *Id.* at 299. For the same reasons, the redactions to ECF No. 27-

3 at pages 11 (second paragraph) and 15 (first Exemption 7(E) redaction to the body of the e-mail) are also valid under Exemption 7(E).

The redactions to ECF No. 27-3 at 9 "cover[] sensitive information regarding the [agency's] collection, maintenance, consideration, and utilization of intelligence information in furtherance of its law enforcement mandate. Numerous intelligence sources are identified by name." ECF No. 27 ¶ 8(d). Unlike the cases cited by the Government, these redactions do not protect "non-public investigative techniques and procedures utilized by the [agency] to pursue its law enforcement and intelligence gathering missions," but rather show general cooperation with other law enforcement agencies. *Yagman v. U.S. Dep't of Justice*, No. CV 13-0354 PA (Ex), 2014 WL 1245305, at *10 (C.D. Cal. Mar. 22, 2014), *aff'd sub nom. Yagman v. U.S. Bureau of Prisons*, 605 F. App'x 666 (9th Cir. 2015). I therefore find that the Government has not met its burden to show that this information is properly withheld pursuant to Exemption 7(E). The Government has similarly failed to meet its burden for the redaction to the first paragraph of the e-mail at ECF No. 27-3 on page 11, the second Exemption 7(E) redaction to the body of the e-mail on page 15, and the Exemption 7(E) redaction to the body of the e-mail on page 16.

The Exemption 7(E) redactions to the body of the e-mail on page 14 of ECF No. 27-3, as well as the subject and/or attachment lines of the e-mails on pages 14-16, comprise only the name of an operations order, which does not constitute "law enforcement techniques and procedures." These redactions, therefore, do not fall within the scope of Exemption 7(E) and are not justified.

### b. Bus Check

The Exemption 7(E) redactions to "Bus Check" (ECF No. 27-4) "withhold the location and which scheduled shift was responsible for certain activities related to [an] operation." ECF No. 27 ¶ 9. These redactions pertain to operations that occurred on a discrete day in the past. I conclude that Exemption 7(E) does not apply because the unredacted records do not indicate that the shift information contained in ECF No. 27-4 has continued relevance to current enforcement capabilities. *See Families for Freedom*, 837 F. Supp. 2d at 299.

### c. Bangor Bus Check

The Exemption 7(E) redactions to "Bangor Bus Check" (ECF No. 27-5) "withhold the location and which scheduled shift was responsible for certain activities related to [an] operation, as well as other operations details concerning the frequency with which such operations were to occur." ECF No. 27 ¶ 10. I conclude that the unredacted records indicate that the redacted information in ECF No. 27-5 bears on continuing law enforcement activities and is therefore appropriately redacted pursuant to Exemption 7(E). *See Families for Freedom*, 837 F. Supp. 2d at 299.

### d. Checkpoint

The Exemption 7(E) redactions to "Checkpoint" (ECF No. 27-6) "concern details such as when, where and how long a checkpoint operation will take place." ECF No. 27 ¶ 11. I conclude that the redacted information concerns a discrete operation that occurred on June 20, 2018, *see* ECF No. 27-6 at 2, and has no bearing on current law enforcement capabilities. Redaction is therefore inappropriate under Exemption 7(E). *See Families for Freedom*, 837 F. Supp. 2d at 299.

## II. CONCLUSION

For the reasons explained above, the Government is **ORDERED** to revise documents ECF No. 27-1, ECF No. 27-3, ECF No. 27-4, and ECF No. 27-6 so that:

- ECF No. 27-1:  The redactions made pursuant to Exemption 7(E) at pages 7, 8, and 11 ¶¶ 10-11 are unredacted.

- ECF No. 27-3:  The Exemption 7(E) redactions to page 9, the first paragraph of page 11, the second Exemption 7(E) redaction to the body of the e-mail on page 15, the Exemption 7(E) redaction to the body of the e-mail of page 16, the Exemption 7(E) redactions to page 14, and the subject and/or attachment lines at pages 14-16 are unredacted.

- ECF No. 27-4:  All redactions made pursuant to Exemption 7(E) are unredacted.

- ECF No. 27-6:  All redactions made pursuant to Exemption 7(E) are unredacted.

No changes are required for ECF Nos. 27-2 and 27-5.  The Government shall send the revised documents, as described above, to the Plaintiff within seven (7) days of the date this Order is entered on the docket.

**SO ORDERED.**

**Dated this 8th day of May, 2019.**

_____**/s/ JON D. LEVY**_____
**CHIEF U.S. DISTRICT JUDGE**